# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| JAYME POWELL,<br><br>    Petitioner,<br><br>vs.<br><br>JIM McKINNEY,<br><br>    Respondent. | No. C13-4020-LTS<br><br>**ORDER** |

## I. INTRODUCTION

This case is before me on petitioner Jayme Powell's Amended and Substituted Petition (Doc. No. 20) for Writ of Habeas Corpus (Petition), filed August 25, 2013, and his supplemental merits brief (Doc. No. 63-1) on Ground I, filed September 1, 2016.[1] Respondent Jim McKinney filed his merits brief (Doc. No. 64) on October 17, 2016. Powell claims he received ineffective assistance of counsel because his trial counsel failed to investigate and object to the DNA evidence that was collected in his case. Doc. No. 63-1 at 2.

## II. BACKGROUND FACTS

The Iowa District Court for Woodbury County summarized the underlying facts as follows:

> On or about October 30, 2005, KayCee Smith was sleeping on a couch at a friends [sic] apartment at 4701 Stone Avenue in Sioux City. The apartment was a part of student housing for Western Iowa Tech. Smith

---

[1] While the Petition advances two grounds for relief, Powell now acknowledges that Ground II is procedurally defaulted. Doc. No. 63-1 at 1. Only Ground I is at issue.

testified at trial that she was attacked by an intruder, who struck her repeatedly in the head. Smith testified she pretended to be unconscious in hope the assailant would leave her alone but resumed attempts to escape when she felt the assailant pulling down her pants. Walsh, the tenant of the apartment, came out of her bedroom as a result of the noise and was struck by the assailant, causing her head to hit the wall. Walsh stated she saw a white Chevy Beretta leaving the apartment's complex. A neighbor witnessed Walsh screaming outside the complex and called emergency services. He testified that it was a white Chevy Corsica leaving the scene.

Officers arrived at the scene to investigate. Walsh and Smith were later taken to a hospital to treat their injuries. Articles of clothing, including a pair of underwear and Smith's rings were taken by the officers. An investigation revealed blood not belonging to Smith on the underwear, as well as on some drapes and elsewhere.

Officer Jason Fleckenstein testified at Applicant's trial. Fleckenstein, a Sioux City Police Department officer, was investigating the assault and based on the Applicant's ownership of a white Beretta, arrived at Applicant's residence. Fleckenstein fabricated a story about investigating a purse snatching in order to initiate contact with the Applicant. At this time, Fleckenstein testified he noticed injuries to Applicant's hands which led to the officer applying for a search warrant, part of which concerned DNA evidence. In executing this warrant, Applicant was brought to the Sioux City Police Department. Two buccal swabs were taken for the purposes of DNA evidence. These buccal swabs were identified as large "Q-tips" used to swab the inside of a mouth in order to obtain DNA. A nurse from Mercy Medical Center also took blood from the Applicant. Fleckenstein testified that after receiving the blood sample, he sealed it in front of the Applicant and showed him the seal. He then testified he brought the blood kit to the refrigerator in the police department's property system. The blood sample, along with several objects from the scene of the assault and the clothing of the victims, was sent to the Department of Criminal Investigation. The results indicated that the Applicant's DNA was present in various places, including some blood on a pair of panties.

DNA testing was undertaken by Applicant's trial counsel, but this testing confirmed the results of the State's testing. According to Williams, the testing also showed there was a lack of preservatives in the blood sample on the panties, which would be incompatible with blood taken from a blood

kit. Williams, in his deposition, indicated that he used the same type of blood kit as used by the State.

Doc. No. 57-7 at 2-4 (citations to state court record omitted).

### III. PROCEDRUAL HISTORY

Powell was found guilty of first-degree burglary and second-degree burglary on August 2, 2006. He was sentenced to a term of incarceration not to exceed twenty-five years. After his direct appeal was denied, Powell filed an application for post-conviction relief (PCR) in the Iowa District Court, arguing that his trial counsel provided ineffective assistance. Doc. No. 29-2 at 20-26. On October 22, 2008, the State filed a motion for summary judgment, which it then amended on June 15, 2009. Doc. Nos. 57-5, 57-6.

The Iowa District Court granted the State's motion, finding that Powell's trial counsel did not provide ineffective assistance. Doc. No. 57-7. Specifically, the court determined that Powell's trial counsel properly investigated allegations of blood tampering and made a strategic choice to discontinue this investigation. *Id*. at 8-10. The court also found no reasonable probability that the result of Powell's case would have been different if counsel's allegedly deficient performance had not occurred. *Id*. at 10.

On June 13, 2012, The Iowa Court of Appeals affirmed the denial of Powell's PCR application. On October 12, 2012, the Iowa Supreme Court denied Powell's request for further review, finalizing the state proceedings. Powell then filed his habeas Petition.

### IV. DISCUSSION

A. *Section 2254 Standards*

"As amended by [the Antiterrorism and Effective Death Penalty Act of 1996] AEDPA, 28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). A federal court will not grant a petition for writ of habeas corpus "unless it appears that (1) the applicant has exhausted the remedies

available in the courts of the State, (2) there is an absence of available State corrective process; or (3) circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(A)-(B). If the claim has been fully adjudicated in State court, federal courts may not grant habeas relief unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Review of the state-court decision is highly deferential. *Cullen*, 563 U.S. at 181 (citing *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)).

The state court reviews a post-conviction relief petition based on ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984). The person challenging a conviction must show that (1) counsel provided deficient assistance to the extent that "counsel's representation fell below an objective standard of reasonableness" and (2) there was prejudice as a result. *Id*. at 688. The errors must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and the defendant was deprived of a fair trial. *Id*. at 687. The state court applies a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689.

Federal habeas courts must find that a state court's application of *Strickland* was unreasonable in order to grant habeas relief. *Harrington v. Richter*, 562 U.S. 86, 101 (2011). This is a highly deferential inquiry because "[a] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id*. "Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).

4

When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." *Id*. at 105. Therefore, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 102 (citing *Lockyer v. Andrade*, 538 U.S. 63 (2003)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id*. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652 (2004)).

The petitioner bears the burden of showing that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id*. (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979) (Stevens, J., concurring in judgment)).

### B.     *Analysis*

Powell contends his trial counsel provided ineffective assistance by failing to investigate the State's blood evidence thoroughly. In seeking federal habeas relief, he argues that the state PCR court's determination of the facts and application of *Strickland* were both unreasonable. I will address each argument separately.

#### 1.     *The PCR Court's Determination of the Facts*

Powell argues that the PCR court failed to develop the record properly. In particular, he contends several disputed issues of material fact existed that should have precluded entry of summary judgment in favor of the State. For example, Powell notes that he was not identified as the assailant at the original trial and he did not match the description of the assailant. Also, while two vials of blood were taken from Powell

5

during the investigation, only one made it to the DCI laboratory while the location of the other was never disclosed. Doc. No. 63-1 at 12-13. In resisting the State's motion for summary judgment, Powell argued that his conviction "was based 100% on blood DNA evidence on the victim's clothing" and suggested that "the second vial of blood was used by someone to 'enhance' the trial evidence." *Id*. at 13. Powell argues that his trial counsel failed to investigate these issues and that the PCR court should have conducted an evidentiary hearing to explore them.

The State contends that the issues of whether to hold an evidentiary hearing and whether to grant a dispositive motion are matters of state procedural law that do not implicate federal law. I agree. The PCR court's decision to grant a motion for summary judgment without conducting an evidentiary hearing was not a misapplication of *federal law* or an unreasonable application of the facts. I reject this argument for federal habeas relief.[2]

### 2. *The PCR Court's Application of* Strickland

Powell argues that the PCR court's decision was a misapplication of *Strickland* and contends that the court misinterpreted his argument.

#### a. *Deficient performance*

Powell's claim that his trial counsel was ineffective centers on his investigation of the blood evidence and Powell's belief that evidence tampering occurred. The PCR court expressly acknowledged Powell's argument that his blood "was planted on the underwear at some point," but found that his trial counsel's actions were reasonable. Doc. No. 57-7 at 9. The court noted that Powell's counsel pursued the blood tampering theory by

---

[2] Making this argument more peculiar is the fact that Powell concedes there are no "grounds to rebut any particular factual finding by the Court in adjudicating his claim." Doc. No. 63-1 at 2. Thus, he states that he "will utilize the factual findings from the State post-conviction ruling in Woodbury County." *Id*.

6

"conducting a test on the blood sample, looking for evidence that the stopper was pierced by a needle and also looking for evidence of anti-coagulants, specifically testing for sodium, on the panties." *Id.* The court also found that Powell failed to present evidence supporting his theory that another blood sample existed that did not contain anti-coagulants. *Id.* Finally, the court noted that Powell's trial counsel tested for the existence of anti-coagulants in the blood kit the State provided him. *Id.* at 10. The court found that even if the State provided the wrong blood kit, trial counsel's findings would have resulted from the wrongful acts of others, not ineffective assistance on trial counsel's part. *Id.* The court stated: "It cannot be said that trial counsel was ineffective for relying on the rules and procedures and not locating evidence despite duplicitous actions from others." *Id.*

Even if I could find that Powell's ineffective assistance of counsel claim has merit, I would also have to find that no reasonable jurist could agree with the PCR's court's determination. *See Harrington*, 562 U.S. at 102-103. I am unable to reach such a conclusion. The PCR court examined Powell's blood tampering claim, found that Powell's trial counsel's investigation was thorough and determined that counsel's decision to end the investigation after testing the State's blood collection kit was reasonable. I find no reason to disagree.

In an effort to determine whether blood tampering occurred, Powell's counsel (a) conducted a test on the State's blood sample (specifically looking for anti-coagulants), (b) looked for evidence that the vial's stopper was pierced by a needle and (c) looked for evidence of anti-coagulants (specifically testing for sodium) on the victim's panties. Powell's counsel testified that he did not investigate whether there was a blood sample without anti-coagulants because he used the same blood collection kit used by law enforcement and found that it contained anti-coagulants, indicating that any planted blood evidence would also contain anti-coagulants. Doc. No. 57-12 at 230-31. Powell contends that his counsel's conduct fell below basic investigatory standards. I disagree.

7

While trial counsel is not required to investigate every possible defense or exhaust every possible avenue or argument, a failure to investigate at all, or the performance of little to no investigation, may amount to ineffective assistance of counsel. *See Kenley v. Armontrout*, 937 F.2d 1298, 1304 (8th Cir. 1991) (citing *Chambers v. Armontrout*, 907 F.2d 825, 828 (8th Cir. 1990) (en banc)). "[T]he duty to investigate does not force defense lawyers to scour the globe on the off chance something will turn up; reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste." *Forrest v. Steele*, 764 F.3d 848, 859 (8th Cir. 2014), *cert. denied*, 136 S. Ct. 35 (2015) (quoting *Rompilla v. Beard*, 545 U.S. 374, 383 (2005)). Additionally, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* (quoting *Strickland*, 466 U.S. at 690).

The state PCR court did not unreasonably apply *Strickland* in finding that Powell's trial counsel properly investigated Powell's claim that the blood evidence was planted. Counsel had the State's blood sample examined for microscopic evidence of needle-point entry, tested the victim's panties for signs of anti-coagulants and determined that the standard blood kit used for blood collection by law enforcement contained anti-coagulants. Powell's counsel reasonably determined, therefore, that if Powell's blood had been planted on the panties, that blood would have contained anti-coagulants. Testing revealed that it did not. While Powell contends that his attorney should have gone further, and investigated whether an officer circumvented procedures by using a blood collection kit that did not contain anti-coagulants, he presents no evidence in support of this theory. It is pure conjecture.

"We will not fault a reasonable strategy not to investigate further if it is based on sound assumptions." *Kenley*, 937 F.2d at 1308 (citing *Pickens v. Lockhart*, 714 F.2d 1455, 1467 (8th Cir. 1983)). Powell's counsel conducted a reasonable investigation into the possibility of blood evidence tampering. In deciding not to investigate further, he was entitled to assume that the State provided him with the correct blood testing kit. The

PCR court did not err in finding that Powell's counsel's strategic decision to end the investigation and refrain from employing a blood-tampering defense at trial was reasonable. As such, I reject Powell's claim that his trial counsel's performance was constitutionally deficient.[3]

### b. *Prejudice*

The PCR court found that Powell failed to show that the outcome of his case would have been different "but for" his counsel's allegedly deficient performance. Doc. No. 57-7 at 10. I agree. The evidence of Powell's guilt was overwhelming. *Christenson v. Ault*, 598 F.3d 990, 997 (8th Cir. 2010) ("When there is overwhelming evidence of guilt presented, it may be impossible to demonstrate prejudice.") (citing *Strickland*, 466 U.S. at 700). At trial, the State presented evidence of (a) witnesses having seen a white two-door vehicle with a bra in the front window leaving the scene of the crime in a rush, (b) a timeline that allowed for Powell to commit the offense, (c) testimony that Powell did not visit the person he said he was visiting when he left his residence on the date of the crime, (d) Powell's return to his residence with cuts on his hand following the commission of this crime, (e) Powell's changing story of how he cut his hand (he initially said he was in a fight and later said he wrecked his dirt bike), (f) Powell's request of a friend to lie to the police for him, (g) blood evidence at the scene of the crime matching Powell's blood, (h) the discovery of Powell's vehicle with a bra in the front window, (i) Powell's square ring matching the shape of a cut sustained by the victim and (j) a shoeprint from the scene that had the same class characteristics and tread design of the shoes Powell wore.

Even without the blood evidence, the State presented ample evidence of Powell's guilt. Moreover, Powell has not established that additional investigation of the blood

---

[3] Powell also argues the PCR court misinterpreted his blood-tampering argument. I disagree. The PCR ruling shows that the court understood Powell's theory to be that a vial of his blood existed that did not contain anti-coagulants and that was planted on the victim's panties.

9

evidence by his trial counsel would have borne fruit. Because there is no evidence that any blood evidence tampering occurred, Powell cannot demonstrate that the outcome of his case would have been different if his counsel would have taken additional steps to investigate the blood evidence. The PCR court did not unreasonably apply *Strickland* in concluding that Powell failed to show prejudice resulting from his counsel's allegedly deficient performance. Powell is not entitled to federal habeas relief.

## V. CERTIFICATE OF APPEALABILITY

A certificate of appealability may be granted only when the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336-37 (2003); *Garrett v. United States*, 211 F.3d 1075, 1076-77 (8th Cir. 2000); *Mills v. Norris*, 187 F.3d 881, 881 n.1 (8th Cir. 1999); *Carter v. Hopkins*, 151 F.3d 872, 873-74 (8th Cir. 1998); *Ramsey v. Bowersox*, 149 F.3d 749 (8th Cir. 1998); *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox*, 133 F.3d at 569. Thus, "[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Miller-El*, 537 U.S. at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Here, I find that Powell has not made the necessary showing with regard to his habeas claims. As such, I will not grant a certificate of appealability. Should Powell wish to seek further review of his petition, he may request a certificate of appealability from a Judge of the United States Court of Appeals for the Eighth Circuit. *See Tiedeman v. Benson*, 122 F.3d 518, 520-22 (8th Cir. 1997).

## *VI.  CONCLUSION*

For the reasons set forth herein, petitioner Jayme Powell's petition for writ of habeas corpus is **denied** and this action is **dismissed**.  No certificate of appealability will be issued for any of Powell's claims.

**IT IS SO ORDERED.**

**DATED** this 22nd day of November, 2016.

_____
LEONARD T. STRAND
UNITED STATES DISTRICT JUDGE